NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MACK BORING & PARTS COMPANY, ) | Hon. Harold A. Ackerman |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | Civ. Action No. 06-2692 (HAA) |
| v. ) | |
| ) | **OPINION & ORDER** |
| ) | |
| NOVIS MARINE, LTD, ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |

Joseph C. Amoroso, Esq.
Timothy I. Duffy, Esq.
COUGHLIN DUFFY LLP
P.O. Box 1917
Morristown, New Jersey 07962-1917
*Attorneys for Plaintiff*

Robert F. Cossolini, Esq.
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078-2703

Daniel F. Gourash, Esq.
Robert D. Anderle, Esq.
SEELY, SAVIDGE, EBERT & GOURASH CO., LPA
26600 Detroit Road
Cleveland, Ohio 44145
*Attorneys for Defendant*

**ACKERMAN,** Senior District Judge:

This matter comes before the Court on a motion (Doc. No. 23) by Plaintiff/Counterclaim-

Defendant Mack Boring Company ("Mack Boring" or "Plaintiff") seeking summary judgment

1

against Defendant/Counterclaim-Plaintiff Novis Marine Limited ("Novis" or "Defendant").  For the following reasons, the Court will grant in part and deny in part Plaintiff's motion.

## I. BACKGROUND

This case involves a contract dispute between a boat parts supplier and a boat manufacturer and implicates alleged admissions made by Defendant during the course of separate litigation involving one of its customers.  Mack Boring, a New Jersey corporation with its principal place of business in New Jersey, is a distributor of boat parts, including Yanmar brand engines and Yanmar saildrives.  A saildrive is a type of engine mounted on the hull of a sailboat.  Novis, whose principal place of business is in Ohio, manufactures and sells boats and yachts.

Plaintiff and Defendant have had a lengthy business relationship.  For more than ten years, Novis has purchased boat parts from Mack Boring.  However, problems arose in relation to certain saildrive purchases made by Novis between November 2005 and March 2006.  During this time, Novis made purchases totaling $138,202.89, but it has failed to make payments in accordance with the payment schedule agreed upon by the parties.  On April 4, 2006, Mack Boring sent a letter to Novis demanding payment for these goods.  Novis responded by letter two days later, alerting Mack Boring of customer complaints regarding corrosion on the Yanmar saildrives and requesting Mack Boring's assistance in resolving the matter.

On May 10, 2006, Mack Boring filed a lawsuit against Novis in the Superior Court of New Jersey, Union County, alleging breach of contract, unjust enrichment, and breach of the implied covenant of good faith based upon Novis's outstanding balance for the Yanmar saildrives.  Novis countered on June 22, 2006, by filing several counterclaims and, pursuant to 28 U.S.C. § 1441, removing the instant matter to this Court on the basis of diversity jurisdiction

under 28 U.S.C. § 1332.  In its counterclaims, Novis alleges that Mack Boring (i) breached its contract by providing defective saildrives; (ii) breached an express warranty to Novis by selling nonconforming goods; (iii) breached the implied warranty of merchantability by supplying goods that were not fit for its ordinary purpose; and (iv) breached the implied warranty of fitness for a particular purpose by selling saildrives that were unsuitable for Novis's needs (Counts I–IV, respectively).  Additionally, Novis raises an affirmative defense—styled as a counterclaim (Count V)—that it timely revoked acceptance of the defective saildrives.

Thereafter, on June 26 of the following year, a customer brought suit against Novis in a Texas state court.  (Amoroso Certification, Ex. P, Complaint in *Sterner v. Fairport Yachts, Ltd.*, No. 2007-38971, 157th Judicial District Court (Harris County).)  In that suit, plaintiff alleges that the boat and the Yanmar saildrive he purchased from Novis were defective.  During discovery in that lawsuit, the Texas plaintiff's counsel served Novis with a request for admissions.  Novis responded January 25, 2008, specifically denying, *inter alia*, the following admission requests: (i) whether the Yanmar saildrives it purchased from Mack Boring (and subsequently sold to Sterner) were defective; (ii) whether Mack Boring breached an express warranty; (iii) whether Mack Boring breached the implied warranty of merchantability; and (iv) whether Mack Boring breached the implied warranty of fitness for a particular purpose.  (Amoroso Certification, Ex. N at ¶¶ 10–18, 22–27.)

Believing that these statements conflict with, and indeed negate, Novis's position in this matter, Mack Boring moved for summary judgment, arguing alternatively that (i) Novis should be judicially estopped from asserting its counterclaims, or (ii) Novis has nonetheless failed to present a genuine issue of material fact regarding its failure to pay for the Yanmar saildrives.

### II. ANALYSIS

#### A. Applicable Law

The agreements between the parties do not specify which law should govern this dispute. Therefore, the Court must follow New Jersey choice-of-law principles, under which the applicable law is that of the jurisdiction "with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1996). New Jersey has the greatest interest in resolving this dispute because Mack Boring is a New Jersey corporation with its principal place of business in New Jersey. Additionally, the allegedly defective saildrives, which are at the center of this dispute, were ordered through Mack Boring's New Jersey office. New Jersey has an interest in regulating and protecting local businesses. Consequently, New Jersey law will govern this dispute.

#### B. Summary Judgment Standard

In any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the moving party bears the burden of demonstrating that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Put differently, summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson*, 477 U.S. at 247–48. A fact is material if it influences the outcome under the governing law. *Id.* at 248; *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).

A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Indeed, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.* This does not mean, however, that a district court may ignore the weight of the evidence. *Id.* "[I]f the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor of the moving party." *Peterson v. AT&T*, No. 99-4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson*, 477 U.S. at 249).

Here, Plaintiff seeks summary judgment as to all claims via application of the equitable doctrine of judicial estoppel and, alternatively, as to the merits of its contract claim. Additionally, Plaintiff requests partial summary judgment limiting the offset damages of Defendant's counterclaims. Having diversity jurisdiction under 28 U.S.C. § 1332, the Court addresses each matter in turn.

*1. Judicial Estoppel*

Traditionally, courts have imposed the doctrine of judicial estoppel to prevent a party from contradicting statements made in previous proceedings before a court or agency. *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 & n.3 (3d Cir. 2001). By excluding inconsistent statements made in bad faith, judicial estoppel reflects the federal courts' interest in preserving the integrity of the judicial process and demonstrates their "authority to

sanction malfeasance." *Id.* at 779. "[W]hen operation of judicial estoppel renders a litigant unable to state a prima facie case," the reviewing court must grant summary judgment. *Id.*

However, judicial estoppel is an "extreme remedy." *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008); *accord Castillo v. Coca-Cola Bottling Co. of E. Great Lakes*, No. 06-183, 2006 WL 1410045, at *2, 6 (E.D. Pa. May 22, 2006) (noting the Third Circuit's "reluctance to apply the harsh remedy of judicial estoppel"). Therefore, judicial estoppel "[is] not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted). Accordingly, the Third Circuit has admonished that the doctrine "should only be applied to avoid a miscarriage of justice"—namely, to prevent a party from simultaneously seeking advantage in separate proceedings via wholly discordant theories. *Krystal*, 337 F.3d at 319 (citations omitted); *see also Montrose*, 243 F.3d at 779–81.

To guide the judicial estoppel inquiry, the Supreme Court synthesized a non-exclusive list of helpful factors that "typically inform" consideration of estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). First, has the party made "clearly inconsistent" statements? Next, has a court or agency accepted the prior statement? Finally, does the inconsistency inure to the benefit or detriment of either party? *Id.* Through these inquiries, the *New Hampshire* Court sought to dispel the "risk of inconsistent court determinations" and "the perception that either the first or second court was misled." *Id.*[1]

---

[1] It bears mentioning that *New Hampshire* left in place the various circuit approaches to judicial estoppel. *See New Hampshire*, 532 U.S. at 750–51. The Third Circuit's test, explained in *Montrose*, asks whether (1) the challenged party asserted "irreconcilably inconsistent" positions; (2) the contradiction was made in bad faith; and (3) judicial estoppel is necessary and "tailored to address the harm identified." 243 F.3d at 779–80. Significantly, the test outlined in

Here, Mack Boring contends that Novis should be judicially estopped from raising its counterclaims because of its inconsistent positions as a defendant in the Texas litigation and Defendant in this proceeding. Thus, this Court must examine the nature of Novis's statements in the Texas litigation.

In its January 25, 2008 responses to the Texas plaintiff's request for admissions pursuant to Texas Rule of Civil Procedure 198, Novis replied "Deny" to the following requests: (1) whether it believed the saildrives purchased from Mack Boring were defective; (2) whether it believed Mack Boring breached an express warranty by supplying defective goods, (3) whether it believed Mack Boring breached the implied warranty of merchantability by selling defective, nonconforming, or unfit goods; and (4) whether it believed Mack Boring breached the implied warranty of fitness for a particular purpose. (Amoroso Certification, Ex. N at ¶¶ 10–14, 16–18, 24, 56.)

Applying the first part of the estoppel test, the January 25, 2008 admission responses might seem clearly inconsistent with Novis's present counterclaims. Questions 10–12 essentially asked if the products delivered by Mack Boring were defective,[2] and Question 56 expressly asked

---

*Montrose* required a finding of prior judicial approval of the inconsistent statement to assess bad faith, *id.* at 781–82, in accord with the second prong of the *New Hampshire* test.

Yet, since *New Hampshire*, the Third Circuit has tended to favor the Supreme Court's reformulation of the judicial estoppel inquiry. *See, e.g.*, *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 517–18 (3d Cir. 2005). And earlier this term, the Third Circuit recognized that both tests addressed the "aggravating factor" that distinguishes an estoppel-worthy contradiction from "mere inconsistency." *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008). Given the Third Circuit trend and the overlapping considerations of both tests, this Court will apply the *New Hampshire* framework.

[2]In fact, the questions specifically track the allegations made by Novis in their Answer/Counterclaim Complaint with regard to the timing and extent of consumer reports of corrosion with the engines, and the economic damage to Novis by replacing the defective

7

if Novis believed that they were defective as of June 22, 2006—the date it filed the counterclaims. Novis denied. Questions 13, 14, and 16–18 sought to ascertain whether Novis believed Mack Boring had breached any express or implied warranties, specifically the implied warranties of merchantability and fitness for a particular purpose. Again, Novis declined. Nonetheless, Novis had previously filed with this Court, and currently maintains, counterclaims alleging product defects (breach of contract and revocation of acceptance) and breach of warranty (express, implied warranty of merchantability, implied warranty of fitness for a particular purpose) for the same goods. At first blush, it would seem the inconsistency requirement has been met.

Yet when considered in the context of Texas civil procedure, Novis's statements of denial do not contradict its present counterclaims as a matter of law. Mack Boring contends that Novis's admission responses satisfy the judicial adoption requirement because Texas courts automatically adopt Rule 198 admissions by operation of law. (*See* Pl.'s Br. at 23; Pl.'s Reply Br. at 5–6.) Although Plaintiff is correct that a Rule 198 admission is conclusive and binding on the presiding Texas court, *see, e.g.*, *Peralta v. Durham*, 133 S.W.3d 339, 341 (Tex. App. 2004), a denial of a request for admission does not have the same legal effect. In *Newman v. Utica Nat'l Ins. Co. of Texas*, a Texas appeals court held that "when an answering party denies or refuses to make an admission of fact, such refusal is nothing more than a refusal to admit a fact. It is not evidence of any fact except the fact of refusal." 868 S.W.2d 5, 8 (Tex. App. 1993); *see also Luke v. Unifund CCR Partners*, No. 2-06-444-CV, 2007 WL 2460327, at *2 (Tex. App. Aug. 31, 2007). Because admission denials "[are] not legal and competent evidence," *Newman*, 868

---

saildrives. (*See* Def.'s Answer/Countercl. Compl. at ¶¶ 8–10; Def.'s Br. at 2.)

S.W.2d at 8, it cannot be gainsaid that Novis truly contradicted itself in denying the requests, nor that a court or agency accepted Novis's answers. Rather, Novis merely put the Texas plaintiff to his proof, and any sanctions for bad faith false admissions answers, if necessary, will lie in the Texas court. *See* Tex. R. Civ. P. 215.4(b).

Because Defendant has not made clearly inconsistent statements in separate proceedings and, in any event, no court or agency has adopted the challenged statements, the judicial estoppel inquiry must end. The Court will deny summary judgment on the basis of judicial estoppel.

*2. Plaintiff's Contract Claim*

Alternatively, Mack Boring contends that it is undisputed that (1) Novis contracted to buy $138,202.89 worth of parts, (2) accepted delivery of the goods, and (3) failed to pay for those goods. With regard to Novis's affirmative defense of revocation, Plaintiff argues that "[t]here is absolutely no support in the record that Novis revoked acceptance," (Pl.'s Reply Br. at 3) and maintains that any monetary losses resulting from defective saildrives can be offset from its damages. Therefore, Plaintiff requests summary judgment on its contract claim ordering Defendant to pay the outstanding balance from the purchases, with interest and attorney fees. Concurrently, Mack Boring requests partial summary judgment on Novis's four counterclaims limiting the offset damages of the counterclaims to the amount supported by Defendant's evidence. Finding no genuine issue of material fact regarding revocation, the Court will grant summary judgment as to Plaintiff's contract claim. Yet, because a genuine dispute remains regarding offset damages, the Court will deny partial summary judgment on Novis's counterclaims.

New Jersey law governs the instant contract claims, and § 2-608 of the New Jersey

9

Uniform Commercial Code (UCC), N.J. Stat. Ann. § 12A:2-608, permits a buyer to revoke acceptance of goods within a reasonable time when product defects substantially impair the value of the goods. In New Jersey, the threshold revocation inquiries regarding timeliness and the substantiality of impairment are all reserved for the jury to decide. *Gen. Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313, 334, 339 (App. Div. 1987) (recognizing that propriety of revocation and substantiality of impairment presented jury questions); *Fablok Mills v. Cocker Machine & Foundry Co.*, 125 N.J. Super. 251, 256–59 (App. Div. 1973) (noting that the timeliness of revocation and the reasonableness of a buyer's continued use of goods were both jury questions). Yet, New Jersey's UCC still requires a buyer to notify the seller of its intent to revoke acceptance of goods. Section 2-608(2) provides that revocation "is not effective until the buyer notifies the seller of it," and Comment 5 suggests that such notification "[generally requires more] than the mere notification of breach required [in the section regarding acceptance of nonconforming goods]."

    This language seems to present a legal threshold—a question of law amenable to resolution on summary judgment in the face of undisputed facts. Unfortunately, New Jersey law is silent on whether the notification requirement presents a question of law or fact. Absent guidance from the New Jersey courts, this Court must predict how the New Jersey Supreme Court would interpret the relevant statutory provision. *Zamboni v. Stamler*, 847 F.2d 73, 81 (3d Cir. 1988). In doing so, this Court finds the approach of other jurisdictions that have identical UCC revocation provisions instructive.

    The jurisdictions that have reviewed this question have uniformly construed § 2-608 to require that the buyer notify the seller of his intent to return the goods. *Atl. Bldg. Sys., Inc. v.*

*Alley Constr. Corp.*, No. 80-874-Z, 1981 WL 138027 (D. Mass. Dec. 29, 1981); *Agrarian Grain Co. v. Meeker*, 526 N.E.2d 1189, 1191 (Ind. Ct. App. 1988); *Allis-Chalmers Corp. v. Sygitowicz*, 571 P.2d 224, 227 (Wash. App. 1977) (dicta); *Boysen v. Antioch Sheet Metal, Inc.*, 306 N.E.2d 69, 71 (Ill. App. Ct. 1974); *see also Solar Kinetics Corp. v. Ryerson*, 488 F. Supp. 1237, 1245–46 (D. Conn. 1980) (adopting Maryland approach that required a detailed notification of revocation); *Clow Corp. v. Metro Pipeline Co.*, 442 F. Supp. 583, 588 (D. Ga. 1977) (suggesting that notification of revocation required some request to return for credit the defective goods); *Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 507 (Md. Ct. App. 1974) (suggesting notification must "*inform* the seller that the buyer has revoked, identify the particular goods as to which [buyer] has revoked and set forth the nature of the nonconformity") (emphasis added); 2 Hawkland Uniform Commercial Code Series § 2-608:5 ("The content of the notification of revocation is sufficient if it fairly apprises the seller that the buyer wants to give back the goods and receive in return his price or a substitute."); 1 White & Summers, Uniform Commercial Code § 8-4 & nn.36–44 (5th ed. 2002).

     A district court in Connecticut faced the same dilemma as this Court in *Solar Kinetics Corp. v. Ryerson*, wherein the court had to determine what the Connecticut courts would decide constituted sufficient notice of revocation under the Connecticut UCC. 488 F. Supp. at 1246. Although the *Solar Kinetics* court suggested that different states had adopted varying approaches to the notification requirement, the jurisdiction it deemed the most lenient (North Carolina) did not go so far as to suggest that a mere complaint about nonconforming goods qualified as notification of revocation. *Id.* at 1245 (citing *Performance Motors, Inc. v. Allen*, 186 S.E.2d 161, 168 (N.C. 1972)). In fact, the *Performance Motors* court found sufficient evidence for

11

revocation where the buyer told the mobile home seller's agent "now this is not right and *I do not want it*." 186 S.E.2d at 168 (emphasis added).  Ultimately, the *Solar Kinetics* court adopted what it deemed the stricter notification test of the Maryland courts, asserting that "[e]ffective notice is an absolute prerequisite to the revocation of acceptance." 488 F. Supp. 1246, 1249 (adopting the test applied in *Lynx, Inc. v. Ordnance Prods.*, 327 A.2d at 507).

Some of these jurisdictions have expressly held that the absence of such notice—that the buyer informed the seller he wanted to return the goods—defeated a claim of revocation as a matter of law.  In an analogous case, a district court in Massachusetts granted summary judgment against the allegedly revoking buyer where the only evidence supporting revocation came from a letter alerting the seller of the defect (leaking roof panels) and "request[ing] immediate assistance to determine the extent of the problem and how [the seller] intend[ed] to correct it." *Atl. Bldg. Sys.*, 1981 WL 138027.  Because the letter "fail[ed] to notify [the seller] that the [buyer] did not wish to keep the roof panels," the court rejected the buyer's revocation argument as a matter of law.  *Id.*; *see also Clow Corp.*, 442 F. Supp. at 588, 593; *Lynx*, 327 A.2d at 512–16.

These decisions are all the more persuasive because of those jurisdictions' general preference—akin to that of New Jersey— to submit issues of notification to the jury. *See P&F Constr. Corp. v. Friend Lumber Corp. of Medford*, 575 N.E.2d 61 (Mass. App. Ct. 1991) (citing *Atlantic Building Systems* in distinguishing between the more common practice of submitting notification questions to the jury and determining the absence of notification as a matter of law); *Clow Corp*, 442 F. Supp. at 589 (making same distinction, noting that "where all the evidence is such that it can lead reasonable minds to only one conclusion as to the sufficiency of notice, the question presented is one of law to be resolved by the court" (citation omitted)); *Lynx*, 327 A.2d

at 512 (same).[3]

Accordingly, this Court holds that under New Jersey's UCC, notice of revocation requires evidence that the buyer at least informed the seller of his desire to return the allegedly nonconforming goods. Thus, notification of revocation requires something more than a bare assertion found in the complaint.[4] If this Court held otherwise, it would open the door for every buyer to assert revocation as a counterclaim whenever a seller sues for breach of contract, rendering the notification requirement of § 2-608(2) mere surplusage.

In the face of this requirement, Defendant ostensibly offers a novel theory of constructive notice premised on its "collective correspondence" with, and counterclaim against, Mack Boring. (Def.'s Br. at 7.) This correspondence includes deposition testimony asserting Mack Boring's awareness of the corrosion problems by the "beginning of [2006]" (Def.'s Br. at 6 (quoting Gourash Certification, Ex. E at 20–22)), as well as an April 6, 2006 letter it sent to Mack Boring requesting Plaintiff's "immediate attention" to address problems of "severe" corrosion with the saildrives, (Drumm Aff., Ex.1). Much like the insufficient letter in *Atlantic Building Systems*, this letter only conveys the buyer's concerns regarding a defective product and a request for

---

[3]Both *P&F Construction* and *Lynx* made these distinctions in the context of notification of rejection under UCC § 2-607, but the analysis is relevant vis-a-vis the higher standard for notification of revocation provided by § 2-608.

[4]The Court recognizes that some courts have permitted the filing of a complaint, by itself, to constitute notice of breach in the context of rejecting goods obtained from a remote seller under UCC § 2-607(3). *See Strzakowlski v. Gen. Motors Corp.*, No. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (citing cases). However, the Court does not view this line of cases applicable here. First, the present case does not involve a remote seller, and, more importantly, § 2-608(2) clearly sets forth a higher notification requirement for revocation than § 2-607(3). The former provision expressly states that revocation cannot take effect until notification occurs, *id.*, and Comment 5 to that provision asserts that revocation notification generally requires more than notification under § 2-607.

assistance from the seller.[5] Nowhere in the letter, deposition testimony, or other evidence submitted by the parties does Novis intimate a desire to revoke acceptance, return the saildrives, or otherwise cancel the order. The Court is left to surmise from these mere crumbs, along with Defendant's bare statement in its counterclaim that it timely notified Mack Boring of its revocation, that Novis actually did notify Mack Boring of revocation. Surely, this paucity of evidence does not create a genuine dispute of material fact.

The Court does not attempt to develop the outer contours of satisfactory notification. That is appropriately the role of the New Jersey legislature and courts. The Court acknowledges that notification of revocation "need not be 'formal.'" White & Summers, *supra*, § 8-4. But in the absence of *any* evidence that Novis notified Mack Boring of revocation besides the bare allegation in the complaint, this Court shall reject the revocation defense as a matter of law.[6]

---

[5]The relevant portions of the letter from Novis to Mack Boring read:

> The purpose of this letter is to inform you of certain conditions which our dealers have been experiencing with Yanmar engines [that] are equipped with saildrive units. Our dealers and our customer service staff have received a growing number of complaints concerning corrosion that has been seen on the saildrive unit. In many instances, the corrosion is severe.
>
> In our view, it is imperative that Mack Boring and Yanmar give immediate attention to these problems. Failure to do so will result in significant costs associated with replacement of the saildrive units, and damage to our [name] brands.
>
> Please contact me at your first opportunity to discuss a plan to address these problems in an expeditious manner.

(Drumm Aff., Ex.1.)

[6]Mack Boring's additional arguments against Novis's affirmative defense of revocation lack merit. Specifically, Mack Boring asserts that § 2-604 of the UCC required a revoking buyer

Because Novis has failed to provide any evidence that it actually notified Mack Boring of its intent to revoke, there is no remaining question of material fact with regard to Plaintiff's breach of contract claim.  Plaintiff's contract claim (Claim I), in reality, is an action for the price of goods under UCC § 2-709, which permits a seller to "recover, together with any incidental damages . . . the price (a) of goods accepted." N.J. Stat. Ann.§ 12A:2-709; *see also* N.J. Stat. Ann. § 2-607(1) ("The buyer must pay at the contract rate for any goods accepted.").  If a buyer does not contest that it accepted goods it purchased from the seller, the buyer must pay the contract price.  *Phibro Animal Health U.S., Inc. v. Cornerstone AG Prods.*, No. 03-2664 (GEB), 2006 WL 2570839, at *3 (D.N.J. Sept. 5, 2006); *Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1457 (D.N.J. 1984) (Debevoise, J.).  Novis does not dispute that a contract existed, nor does it quarrel with the veracity of the invoices submitted by Mack Boring. Its other defenses and counterclaims only seek to offset the amount owed on its contract with Mack Boring by the cost of replacing the defective saildrives.  Bereft of its revocation argument, there is no dispute that a contract existed or that Novis accepted the goods.  In similar circumstances, courts have granted summary judgment awarding plaintiff the price for goods, "even though the defendant could be entitled to a setoff or recoupment if it were successful on its counterclaim[s]."  *Electro-Catheter Corp.*, 587 F. Supp. at 1457.  Accordingly, the Court will

---

to "either (1) store the rejected goods for the seller's account; (2) re-ship the goods to the seller; or (3) resell [the goods] for the seller's account."  (Pl.'s Reply Br. at 5).  However, New Jersey courts have recognized that § 2-604 only provides a non-exhaustive list of options of what the rejecting buyer *may* do with the nonconforming goods. *Fablok Mills v. Cocker Machine & Foundry Co.*, 125 N.J. Super. 251, 257 (App. Div. 1973).  Likewise, Plaintiff's suggestion that too much time has passed for Defendant to revoke is of no moment.  Whether revocation occurred within a reasonable time is a question of fact for the jury to decide.  *Id.* at 256–57. However, because no dispute exists with regard to notice, Mack Boring will prevail on the revocation issue.

15

award summary judgment for Mack Boring in the amount of $138,202.89 for its contract claim as an action on the price of the contract under N.J. Stat. Ann. § 12A:2-709. In light of this disposition, the Court suspects that Plaintiff has no reason to proceed with its unjust enrichment and bad faith claims (Claims II and III). But because Plaintiff has not moved with regard to these claims, the Court cannot resolve them at this time.[7]

Finally, the Court considers the extent of Novis's counterclaims regarding offset damages. Plaintiff asserts that Novis only presented evidence indicating that it paid to replace one of the defective saildrives. However, Novis submitted deposition testimony of its officers stating that it bore damages exceeding $15,000 by replacing more than two defective saildrives. (Amoroso Certification, Ex. J at 59–60, Ex. K at 35.) Furthermore, Mack Boring appears to contest whether it was responsible for the damages itemized in Defendant's receipts. A genuine issue of material fact thus remains. It is not for this Court to weigh the evidence, and, absent a specified figure for offset damages, the Court will not grant partial summary judgment limiting Novis's offset damages.

With counterclaims still pending, the Court will stay entry of judgment on Plaintiff's contract claim pursuant to Fed. R. Civ. P. 54(b). *See Electro-Catheter Corp.*, 587 F. Supp. at 1457.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Mack Boring's motion for summary judgment (Doc. No. 23) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED that summary judgment

---

[7] At the appropriate time, Plaintiff may brief the issue of prejudgment interest and attorneys fees if they so choose.

is GRANTED on Mack Boring's breach of contract claim (Claim I), with an award of damages in the amount of $138,202.89.  The entry of judgment on Mack Boring's contract claim is hereby STAYED, pending resolution of Novis's counterclaims.  Finally, it is hereby ORDERED that partial summary judgment limiting Novis's counterclaims is DENIED; Defendant's counterclaims I–IV remain.

Dated: September 17, 2008
Newark, New Jersey

                                                                           <u>/s/ Harold A. Ackerman</u>
                                                                            U.S.D.J.